## Case No. 12,715.

SHATTUCK v. MUTUAL LIFE INS. CO.

[4 Cliff. 598; 7 Ins. Law J. 937; 7 Reporter, 171; 19 Alb. Law J. 138.] [1]

Circuit Court, D. Massachusetts. May, 1878.

INSURANCE—WHEN CONTRACT COMPLETE—PLACE OF CONTRACT—PROPOSALS—AGENT.

1. Contracts of insurance are completed when the proposals of one party have been accepted by the other by some appropriate act signifying such acceptance.

2. The place or seat of the contract is the place where it is accepted.

3. If an agent appointed in a state other than the one that chartered the insurance company, or in which it has its home office, forward the papers to that office, and the policy is thereupon executed and sent to the applicant, the contract is made in the state where the home office is situated.

[Cited in Smith v. Mutual Life Ins. Co. of New York, 5 Fed. 583.]

4. Since acceptance of the proposals is the test of completion, it follows that a transmission of the policy by mail to the agent, to be by him delivered, if the policy conforms to the proposals, would have the like effect, unless it was not to be binding until countersigned by the agent.

5. In this case the contract was complete, because the proposals were submitted by the decedent, were accepted by the company at its home office, and the acceptance made known to the applicant in the accustomed way.

The following is the substance of the agreed statement upon which the case was argued: This is an action on a policy of insurance, issued by the defendant upon the life of the plaintiff's intestate, Noah G. Shattuck. The plaintiff [Mary W. Shattuck] is a citizen of the state of Massachusetts. The defendant is a corporation organized under the laws of the state of New York, and having its place of business in the city of New York. and is engaged in the business of issuing policies of insurance upon the lives of persons residing in the various parts of the United States. It has agents appointed for certain specific purposes. As appears on the face of the policy, these agents "are not authorized to make, alter, or discharge contracts or waive forfeitures." It also appears on the face of the policy that the same is issued by the company in consideration, among other things, of the payment by the assured of the first and each succeeding pre-

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission. 19 Alb. Law J. 138, and 7 Reporter, 171, contain only partial reports.]

mium at its office in the city of New York, that the policy is executed at said office and the loss payable thereat. It appears, by the receipts for premiums delivered to such of the assured as transmit their premiums to said office in the city of New York, that, for the convenience of such assured, the company appoints agents who are authorized to receive such premiums, but only on the production of the company's receipt duly signed by the president, vice-president, secretary, assistant secretary, or cashier thereof. These agents are only authorized to receive applications from persons desiring insurance, and forward such applications to the office of the corporation in New York, where, if the application is accepted, a policy is issued and sent by mail to the agent in the state in which the application is made, to be there delivered by said agent to the insured upon payment by the assured to the agent of the first premium. But such applications are not forwarded by said agents to the office of the company in New York until the applicants have been examined by physicians appointed by the company in the state in which the applicants reside, and have been recommended by said physicians, upon said examination, as suitable subjects for insurance in said company. For convenience of the policy-holders, receipts for all subsequent premiums are forwarded from New York to said agent, to be delivered by him in his state to the insured upon payment of the same.

The defendant corporation, on November 22, 1869, at its office in New York, issued a policy of insurance on the life of the said Noah G. Shattuck, the plaintiff's intestate, for one thousand dollars ($1,000). At the time said policy was issued said defendant corporation was doing business in this commonwealth, in accordance and in compliance with the laws of this commonwealth, and especially in accordance and in compliance with the law of this commonwealth as found in Gen. St. Mass. c. 58, §§ 68, 69, in reference to foreign insurance companies, viz.:

Section 68: "Every foreign insurance company, before doing business in this state, shall in writing appoint a citizen thereof, resident therein, a general agent upon whom all lawful processes against the company may be served with like effect as if the company existed in this state; and said writing or power of attorney shall stipulate and agree, on the part of the company making the same, that any lawful process against said company, which is served on said general agent, shall be of the same legal force and validity as if served on said company. A copy of the writing. duly certified and authenticated. shall be filed in the office of the insurance commissioners, and copies certified by them shall be sufficient evidence. This agency shall be continued while any liability remains outstanding against the company in this state, and the power shall not be revoked until the same power is given to another, and a like copy filed as aforesaid. Service upon said agent shall be deemed sufficient service upon the principal."

Section 69: "The general agent shall, before any insurance is made by said company, give a bond to the treasurer of the commonwealth, with one or more sureties to be approved by him. in the sum of $2,000, with condition that he will accept service of all lawful processes against the company in the manner provided in this chapter. Every agent of a foreign insurance company doing business in this state shall, before any business is done by him for said company, give a bond to the treasurer, with one or more sureties to be approved by him, in the sum of $1,000, with conditions that he will, on or before the 15th day of November in each year, make a return on oath, to the treasurer, of the amounts insured by him, the premiums received, and assessments collected during the year ending on the 31st day of the October preceding. and at the same time pay to the treasurer the taxes provided in the following section."

Said policy was sent by mail to the said defendant's agent in said commonwealth of Massachusetts, and by him delivered to the said Noah G. Shattuck, in Massachusetts, upon payment of the required premium to said agent. Noah G. Shattuck died Nov. 8, 1876, and due notice and proof of his death was given by the plaintiff to the defendant. Quarterly premiums, in accordance with the conditions of the policy, were payable on the 22d of February, May, August, and November respectively in each year. These premiums were paid by the assured, and received by the defendant, up to and including the payment due May 22, 1874, since which date no money on account of said premiums has been paid by the insured or received by the defendant. By reason of the non-payment of said premiums and in accordance with condition number two (2) of said policy, said company was "not liable for the payment of the sum assured or any part thereof, and this policy" ceased and determined unless it was kept in force by the provisions of St. Mass. 1861, c. 186. It was further provided by said policy, that in every case wherein the said policy should cease or determine, all the premiums paid should be forfeited to the company. All other conditions in said application and policy were complied with by the assured, except the payment of the quarterly premiums subsequent to May 22, 1874.

If, upon the foregoing facts. the court shall hold that St. Mass. 1861. c. 186, applies to the contract made between the defendant and the insured. and that by reason of said statute the policy was in full force and effect at the death of said Noah G. Shattuck, judgment is to be entered for the plaintiff, for $925.00, being the amount of said policy less the unpaid premiums; otherwise judgment for the defendant.

T. H. Sweetser and G. A. A. Pevey, for plaintiff.

We are to undertake in this argument to ascertain whether or not St. Mass. 1861, c. 186, applies to the contract made between the defendant and the assured. See St. 1872, c. 325, § 7, in reference to the same; also, St. 1870, c. 349, § 5; St. 1867, c. 267, § 5. Upon the facts as agreed in this case, it becomes material in the first place to ascertain the place of the contract. Add. Cont. (Am. Ed.) § 241, note 1, and cases cited; Chit. Cont. (10th Ed.) p. 90, note b, and cases cited; Story, Cont. (5th Ed.) § 802. When, therefore, was the contract of insurance in question completed? At what place did the minds of the parties meet, and the proposals offered by either assented to by the other? The defendant at New York accepted the application, issued the policy at their office in New York, and sent it by mail to the agent in Massachusetts, "to be delivered there by said agent to the insured upon payment by the assured, to the agent, of the first premium." May, Ins. § 66. The defendant assented to the policy provisionally, that is, upon payment to the agent of the first premium. Before the premium was paid the applicant had not assented to the policy, and had not complied with the conditions upon which the policy was issued. Mutual Life Ins. Co. of New York v. Young, 23 Wall. [90 U. S.] 85. We will suppose that the agent handed the policy to the applicant merely for inspection, and the applicant had retained it, not paying the premium, and no waiver of payment being made. In such a case, can it be said that the applicant could lawfully hold the policy or have any rights under the same which he could enforce against the defendant company, or could he in such a case be called the assured? It appears not. In Markey v. Mutual Ben. Life Ins. Co. of New Jersey, 103 Mass. 78, the facts show that the policy was handed by the agent to the applicant merely for inspection, so that the applicant might determine whether or not to accept the policy and pay the premium. The court say: "At the most, this (delivery) was a mere proffer of the instrument which contained the contract; requiring, upon the other side, acceptance and payment of the premium to give it (i. e. the policy) legal effect and operation as a contract. The payment of the premium and delivery of the policy were dependent upon each other. The mere act of manual possession, under the circumstances, does not vest the legal title in the plaintiff, nor prove that it was so delivered." Id. 89. One party is not bound by such a proposal until the other is bound by the acceptance. Hoyt v. Mutual Ben. Life Ins. Co., 98 Mass. 539, 544. Hence, the place of the delivery of the policy and the payment of the premium is the place of the contract. Bliss, Ins. (2d Ed.) p. 613, § 362; Heiman v. Phœnix Mut. Life Ins. Co. of Connecticut, 17 Minn. 153 (Gil.

127); Schwartz v. Germania Life Ins. Co., 18 Minn. 448 (Gil. 404).

The agreed facts show that the agent had no power to deliver the policy until the premium was paid; and the second condition of the policy apprised the agent, as well as the applicant, that the contract was not to be complete until the premium was paid; and that, upon payment, the policy, as evidence of the same, should be delivered to the applicant, who then became the assured. Faunce v. State Mut. Life Ins. Co., 101 Mass. 279; Bailey v. Hope Fire Ins. Co., 56 Me. 474; Collins v. Insurance Co., 7 Phil. Ch. 201; Tayloe v. Merchants' Fire Ins. Co., 9 How. [50 U. S.] 402. In that case the court say that the offer was continuous until it reached the applicant, and was in due time accepted or rejected by him; and that the place of the contract was the place of the acceptance. Daniels v. Hudson Fire Ins. Co., 12 Cush. 422; Heebner v. Eagle Ins. Co. of Cincinnati, 10 Gray, 131; Pomeroy v. Manhattan Life Ins. Co., 40 Ill. 398. The payment of the premium is always regarded as essential to the contract of insurance by the companies. See, among many other cases, Dodge v. Mutual Life Ins. Co., U. S. C. Ct. Ky.;[2] Rogers v. Charter Oak Life Ins. Co., 41 Conn. 97; Cooper v. Pacific Mut. Life Ins. Co., 7 Nev. 116. In a recent case in Canada, the place of the payment of the premium was held the place of the contract. In that case the policy was executed in the United States, at the office of the company, and sent to the agent in Canada for delivery there. It was held that the contract was made in Canada, and the rights of the parties must be governed by the laws of Canada. Meagher v. Aetna Ins. Co., 20 U. C. Q. B. 607. "Such contracts (i. e., between a foreign insurance company and a citizen of another state) are not inter-state transactions, though the parties may be domiciled in different states. The policies do not take effect until delivered by the agent in Virginia." Field, J., in Paul v. Virginia, 8 Wall. [75 U. S.] 168. This contract, having been made in Massachusetts, is to be construed and interpreted, as before stated, by the laws of Massachusetts then in existence. Blanchard v. Russell, 13 Mass. 16; Paul v. Virginia, 8 Wall. [75 U. S.] 168.

Insurance companies stand in just the same position, in respect to the statements just made, as a natural person. When a foreign corporation comes, by its officers, within the jurisdiction of another state, and there engages in business, it becomes amenable to the laws of the latter state, upon the same principle and to the same extent that companies incorporated by the latter state would be. Austin v. New York & E. R. Co., 25 N. J. Law, 381; Warren Manuf'g Co. v. Etna Ins. Co. [Case No. 17,206]; Columbia Fire Ins. Co. v. Kinyon, 37 N. J. Law, 35; Martine v. International Life Ins. Soc., 53 N. Y. 339. The consent given this defendant company to transact business in Massachusetts

2 [Unreported.]

may be accompanied by such conditions as Massachusetts may think fit to impose, "and these conditions must be deemed valid and effectual by other states and by this court, provided they are not repugnant to the constitution or laws of the United States, or inconsistent with the rules of public law which secure the jurisdiction and authority of each state from encroachment by all others, or that principle of natural justice which forbids condemnation without opportunity for defence." Curtis, J., in Lafayette Ins. Co. v. French, 18 How. [59 U. S.] 406; Paul v. Virginia, 8 Wall. [75 U. S.] 168; Bank of Augusta v. Earle, 13 Pet. [38 U. S.] 589; Kennebec Co. v. Augusta Insurance & Banking Co., 6 Gray, 208; Ang. & A. Corp. § 273; Thorne v. Travellers' Ins. Co. (1875) 80 Pa. St. 15. In 1869, at the date of this contract, insurance companies were subject to the law of 1861 (chapter 186). Every contract made by the defendant since said act of 1861 (chapter 186) went into effect, and prior to its repeal in 1877, has been made in view of and in subordination to the law of 1861 (chapter 186), which has thus been substantially incorporated into the contract. Shaw v. Berkshire Life Ins. Co., 103 Mass. 254; Pitt v. Same, 100 Mass. 500; Morris v. Penn Mut. Life Ins. Co., 120 Mass. 503; Chamberlain v. N. H. Fire Ins. Co., 55 N. H. 249; Emery v. Piscataqua F. & M. Ins. Co., 52 Me. 322. Hence, the obligations of this contract depend upon and necessarily refer to Act 1861, c. 186. Cooley, Const. Lim. 285; Ogden v. Saunders, 12 Wheat. [25 U. S.] 259; McCracken v. Hayward, 2 How. [43 U. S.] 612. This defendant company cannot, by its policy, annul the obligations of said statute of 1861 (chapter 186), and said plaintiff's intestate could not be bound by terms in said policy contrary to its mandates. This "statute does not annul this policy, having provisions at variance with its requirements. It simply annuls and renders void these provisions. It leaves the policy, in all other respects, in full force." Appleton, C. J., in Emery v. Piscataqua F. & M. Ins. Co., 52 Me. 322. Consequently, this statute of 1861 applies to this contract, and must determine the rights of these parties under the same, unless it comes within the provisos, before cited in the opinion given by Curtis, J., in Lafayette Ins. Co. v. French, 18 How. [59 U. S.] 406.

It is a well-known maxim of law that forfeitures in insurance policies are always strictly construed by the courts against the companies, and in favor of the assured; and that courts will find a waiver on slight evidence. Young v. Mutual Life Ins. Co. of New York (1873) 23 Wall. [90 U. S.] 85, 4 Bigelow, Cas. 5. And in construing this policy, the same rule will no doubt be applied by this circuit court, in considering the law of 1861 as applied to this contract. The legislature of Massachusetts, in passing said law, and the supreme court, in opinions upon the same, had in view the same law in reference to forfeitures. Said supreme court has decided that said law of 1861 applies both to foreign and domestic companies. Morris v. Penn Mut. Life Ins. Co., 120 Mass. 503. And by the above decision they have passed upon the validity of said law, and from comparison of the decisions of the supreme court of the United States, upon laws enacted by states in regard to foreign companies doing business in a state in which they were not incorporated, we fail to see in what way this statute of 1861 (chapter 186) is repugnant to the rule of law affirmed, as before cited, upon this question. It has been held by the supreme court of the United States that "a bankrupt and insolvent law which discharged both the debtor and his future acquisitions of his property was not a law impairing the obligations of contracts, so far as respects debts contracted subsequent to the passage of said law." Baldwin v. Hale, 1 Wall. [68 U. S.] 231; Sturgis v. Crowninshield, 4 Wheat. [17 U. S.] 199; Potter's Dwar. St. 475, 476. That statute of 1861 (chapter 186), as far as this contract is concerned, is still in existence, and the statute of 1877 (chapter 61) can have no retroactive effect upon the rights and liabilities which the parties respectively incurred when they entered into this contract in November, 1869. Hill v. Duncan, 110 Mass. 238, 240, and cases cited; Kelsey v. Kendall, 48 Vt. 24.

Dwight Foster and Alfred D. Foster, for defendant.

By the express terms of this statute its provisions are limited to life-insurance companies "chartered by the authority of this commonwealth." The defendant corporation was created by the laws of New York and, for the purposes of federal jurisdiction, is held to be a citizen of that state; in Massachusetts it is "a foreign insurance company," liable to be excluded altogether from this commonwealth, or to be admitted to do business here upon any conditions the state may impose and the company accept. Paul v. Virginia, 8 Wall. [75 U. S.] 181; Home Ins. Co. v. Morse, 20 Wall. [87 U. S.] 445; Doyle v. Continental Ins. Co., 94 U. S. 535. Possibly the suggestion may be made that the present case is affected by St. 1870, c. 349, § 5, and St. 1872, c. 325, § 7, as construed in Morris v. Penn Mut. Ins. Co., 120 Mass. 503, the headnote of which case is, "St. 1861, c. 186, relating to the forfeiture of policies of life-insurance, applies by force of St. 1872, c. 325, § 7, to foreign as well as to domestic insurance companies." If so, the following answers, briefly stated, are believed to be sufficient: The present policy, issued November 22, 1869, before the passage of either of these statutes. The Massachusetts non-forfeiture law does not apply to policies issued by Massachusetts companies prior to its passage. Shaw v. Berkshire Ins. Co., 103 Mass. 254. Neither of the other statutes referred to purports to be retroactive, but each is

limited to future contracts made within and governed by the laws of the state of Massachusetts. "All corporations, &c., doing business in this state, &c., shall be considered and deemed to be life-insurance companies within the meaning of the laws relating to life-insurance within this state, and shall not make any such insurance, &c., except in accordance with, and under the conditions and restrictions of, the statutes now or hereafter regulating the business of life-insurance." St. 1872..

A statute affecting the rights of parties is never allowed a retroactive operation when this is not required by express command or by necessary and unavoidable implication. Murray v. Gibson, 15 How. [56 U. S.] 423; Harvey v. Tyler, 2 Wall. [69 U. S.] 347; Sohn v. Waterson, 17 Wall. [84 U. S.] 598; King v. Tirrell, 2 Gray, 333. If these statutes, or any other, expressly undertook to apply the provisions of the Massachusetts non-forfeiture law to previously existing contracts of life-insurance, they would be obnoxious to the constitutional provision which declares that no state shall pass any law impairing the obligation of contracts. Const. U. S. art. 1, § 10. Any deviation from the terms of a contract, by postponing or accelerating the period of performance which it prescribes, imposing conditions not expressed in the contract, or dispensing with those that are, impairs its obligation. Van Hoffman v. Quincy, 4 Wall. [71 U. S.] 553; Edwards v. Kearzy [96 U. S. 595] Oct. term, 1877. No argument is required to show that a statute which does away with an express condition forfeiting a life-insurance policy for non-payment of premiums, and enlarges the liability of the company beyond the terms of the contract, by extending the duration of the policy, falls within this definition. Furthermore, the policy of insurance in the present instance is not a Massachusetts but a New York contract. No legislation of Massachusetts could possibly affect its provisions. The policy was written, dated, and delivered in New York; the premiums and the loss are there payable. Scudder v. Union Nat. Bank, 91 U. S. 413; New York Life Ins. Co. v. Davis, 95 U. S. 425; Ex parte Heidelback [Case No. 6,322]; Whart. Confl. Laws, § 465; Parken v. Royal Exch. Ins. Co., 8 Ct. Sess. Cas. (2d S.) 365; Ruse v. Mutual Ben. Life Ins. Co., 23 N. Y. 521; Hyde v. Goodnow, 3 N. Y. 265; Spratley v. Mutual Ben. Life Ins. Co. (Ky. Ct. App.; 1875) 11 Bush, 443; 4 Bigelow, Cas. 84; Green v. Collins [Case No. 5,755].

Other pending suits will require a full discussion of the question; what life-insurance policies are governed by the laws of Massachusetts, so that its legislation is incorporated into their provisions as a part of the contract. For the purposes of the present cause it is deemed sufficient to refer to the foregoing, which are only a few of the leading authorities, and to observe that the question is believed to be one of general commercial jurisprudence and not of local law, and that in Morris v. Penn Mut. Ins. Co., 120 Mass. 503, this question was not alluded to in the opinion of the learned judge, who pronounced the judgment of the court, except in the final sentence of his opinion, which treats it as disposed of by the agreement of parties.

CLIFFORD, Circuit Justice. Contracts of insurance are completed when the proposals of the one party have been accepted by the other by some appropriate act signifying such an acceptance, and it follows from that rule that the place or seat of the contract is the place where it was accepted. Consequently if an agent appointed in a state other than that which chartered the company, and in which the company has its home office, forwards the requisite papers to that office, and a policy is thereupon executed there, and mailed directly to the applicant, the contract is a contract made in the state where the home office is situated; and since the acceptance of the proposals is the test of completion, it follows that a transmission of the policy by mail to the agent, to be delivered by him to the applicant, if the policy conforms in all respects to the proposals, would have the like effect, unless by the terms of the policy it was not to be binding until it was countersigned by the agent who forwarded the proposals. May, Ins. § 66; Hyde v. Goodnow, 3 N. Y. 266; Huntley v. Merrill, 32 Barb. 626; Western v. Genesee Mut. Ins. Co., 12 N. Y. 263.

Agents are appointed by the defendant corporation for certain specific purposes, but the agreed facts show that they are not authorized to make, alter, or discharge contracts, or to waive forfeitures. Policies are issued by the company in consideration, among other things, of the payment by the assured of the first and each succeeding premium, at its office in New York, where the policy in this case was issued, and where the loss, if any, is payable. For the convenience of such of the assured as transmit their premiums to the home office, the company appoints agents who are authorized to receive such premiums, but only on the production of the company's receipt, duly signed by the president, vice-president, secretary, assistant secretary, or cashier thereof. These agents are only authorized to receive applications from persons desiring insurance and to forward the same to the home office of the corporation, where, if the application is accepted, a policy is issued and sent by mail to the agent in the state in which the application is made, to be there delivered by said agent to the insured upon payment by the insured, to the agent, of the first premium. Applications of the kind, however, are not forwarded by the agents to the home office of the company until the applicants have been examined by physicians appointed by the company in the state in which the applicants reside, and have been recommended by said physicians as suitable

subjects for insurance in said company. Receipts for all subsequent premiums are, for the convenience of the policy-holders, forwarded from the home office to the agent, to be delivered by him in his state to the insured, upon payment of the same.

On the 22d of November, 1869, the policy in this case, on the life of the plaintiff's intestate, was issued at the home office, in New York, by the defendant corporation, in the sum of $1,000, a copy of which is annexed to the agreed statement. Before that date, the company had complied with the requirements of the General Statutes of Massachusetts in respect to the appointment of an agent in the state, upon whom all lawful processes against the company might be served. Gen. St. c. 58, §§ 68, 69. Said policy was sent by mail to the agent of the company, and was by him delivered to the insured, and the agreed facts show that the insured died November 8, 1875, and that due notice and proof of his death was given by the plaintiff to the defendant corporation. It is admitted by the counsel of the plaintiff, in his argument, that proposals for insurance were made by the decedent in due form, and that they were properly forwarded by the agent of the company to the home office of the defendant corporation; and that the defendant corporation, at their home office, accepted the proposals, and there issued the requested policy, and sent the same by mail to the agent who forwarded the proposals, to be delivered by said agent to the insured upon payment by the insured, to the agent, of the first premium. Beyond all question the admissions of the plaintiff to that extent conform in every particular with the agreed facts, and the plaintiff also admits that the contract in such a case is complete when the proposals of one party have been accepted by the other by some appropriate act signifying the acceptance, and that the place of the acceptance is the place of the contract.

Suppose that is so, of which there can be no reasonable doubt, the court is then of the opinion that the proposals of the decedent were accepted by the defendant corporation, at their home office, within the plaintiff's own rule of law; that the defendant corporation, in issuing the policy in exact accordance with the terms of the proposals, and in sending it by mail to the agent who forwarded the proposals of the applicant, to be delivered there, by said agent, to the insured upon payment by the insured to the agent of the first premium, did signify the acceptance of the proposals by an appropriate act, if not by the only act adapted to make known their intention to insure the life of the applicant. What the plaintiff contends is, that before the premium was paid, the applicant had not assented to the policy and that he had not complied with the conditions upon which the policy was issued; but the agreed facts show that the premiums were paid by the insured and were received by the defendant corpora-

tion up to and including May 22, 1874, four years and a half from the date of the policy, since which time no money was paid on account of premiums. Nor can the proposition submitted by the plaintiff be sustained, for three reasons: (1) Because the proposals were submitted by the decedent. (2) Because the contract became complete when the proposals were accepted by the defendant corporation. (3) Because acceptance of the proposals without variation was made known to the applicant in the usual and accustomed mode.

Attempt is made to support the theory of the plaintiff by reference to the case of Mutual Life Ins. Co. v. Young, 23 Wall. [90 U. S.] 85, in which the opinion was given by Mr. Justice Swayne, but it is obvious that the case affords no support whatever to the theory, for reasons which pervade the whole opinion: (1) Because the acceptance was a qualified one. (2) Because new terms were added to the proposals. (3) Because the proposals contained conditions. (4) Because the delivery was conditional. (5) Because the policy did not conform to the proposals.

Much discussion of the other points in the case is unnecessary, as they are the same as those decided in the preceding case, to which reference is made for the reasons which induce the court to hold that the home office of the defendant corporation is the place of the contract, and that the Massachusetts statute referred to is not applicable in such a case. Pursuant to the agreed facts the defendants are entitled to judgment.

Judgment for defendants.

